Thank you, Patrick. Good afternoon. This is the case of Delaware River Joint Toll Bridge Commission versus Secretary Pennsylvania Department of Labor and Industry. Mr Marenstein, you ready to proceed? Yes, Your Honor. All right. I should add its case number 20-18 98. Did you reserve time for a butler? Would you like to Mr Marenstein? I'd like to reserve two minutes if I may. Absolutely. You may proceed. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, again, Bruce Marenstein on behalf of the appellant, the Commonwealth of Pennsylvania's Secretary of the Department of Labor and Industry. There are two grounds on which the Court can and should reverse the District Court's decision. First, the Commission's lawsuit is barred by the 11th Amendment. And second, the District Court erred in finding that the Commonwealth had expressly and to regulate the safety of the Commission's buildings within Pennsylvania. Starting, if I may, with the 11th Amendment immunity issue, the Commission's lawsuit may nominally be against a single state official, the Secretary of Labor and Industry. But the Commission has made clear in the communications with the Commonwealth leading up to the lawsuit, in its complaint in the lawsuit, in statements it made during the litigation, that it's lawsuit is really an attack on the entire sovereign authority of the Commonwealth over the Commission. The Commission has stated unequivocally that it believes, and it filed this lawsuit to establish, that it is not subject to the regular sovereign regulation of any department or any agency of the Commonwealth of Pennsylvania. So while this suit may, because of the case or controversy requirement, involve one building, the Department of Labor and Industry's regulation of that building, what it really is about is the Commission attempting to prevent the Commonwealth of Pennsylvania from exercising any sovereign regulatory authority over the Commission. But how does it not fit squarely within Ex parte Young, where a state official, who's a secretary, commits an ongoing violation of federal law, going against a federal compact, should be stripped of his official representative character and loses protection? It's and it's a prospective. Why is this not squarely within Ex parte Young? I think this court rejected that exact argument a few months ago in the Waterfront Commission decision. The court said you can't just look at the fact that the defendant is a state official, and the plaintiff is alleging a violation of federal law and is seeking equitable relief, prospective relief. The fact is, is that if the effect of the relief is to essentially attack the state, the 11th Amendment is implicated. That was a huge financial and pecuniary interest, and they were seeking specific performance of the compact. So those two prongs are not here, not present in this case. Well, the court, I acknowledge that the first one that Your Honor mentioned, is not present here. But in Waterfront Commission, the court made clear that those are two independent bases to find the 11th Amendment applied. And so the first one, I agree, is not an issue. We have not argued that there is a impact of the commission suit. But the second one, the court's focus wasn't so much on the specific performance. The court said even where equitable relief, like specific performance, is the only relief sought, it still is barred by the 11th Amendment. If the real substantial party in interest is the state, and the effect is to preclude the state from exercising its sovereign authority. In that case, the commission was attempting to prevent the state from taking steps to Here, the commission is attempting to prevent the state from taking any steps to regulate any conduct of the commission. And that is Is that what Judge Kearney's order said? Was the order of the district court that broad? It was not that broad, Your Honor. So it sounds like you're litigating the next case. I mean, this case involves one building, and the order was not broad. So it doesn't appear that the district court entered some sort of relief consistent with the scenario you present. It seems like the district court entered relief consistent with the notion that this is just a fight over who can have control over this building and whether there's a building permit required or an elevator certificate required, etc. Isn't that really all that's at stake in this particular appeal? That's the only actual relief in this case. Absolutely. As I said, because of obviously the sort of the case or controversy requirement, the only controversy that was was joined at this time was involved the Scudder Falls Administration building and the Department of Labor and Industries attempt to regulate safety with regard to that building. But the commission never Not a law renouncing the compact as you had in Waterfront. No, and that definitely is a different fact. But I think the ultimate relief that the commission is seeking here is again essentially a declaration of independence that it has no regular that the Commonwealth has no regulatory authority over any aspect of the commission's operations. That's what it said in its complaint. I mean, it made it clear the complaint again was related to the Scudder Falls Administration building, but the commission what it seeks in the in the reasoning on which it relies would apply to any attempts by the Commonwealth to regulate the commission. If my friend Mr Scott is prepared to concede that all that's an issue and the only thing that they will ever seek is is to preclude the regulation of safety in the Scudder Falls Administration building. You know, I will move on from the 11th Amendment issue, but I the comp the commission has made clear, as I said in all of its communications that that really precipitated the litigation in its complaint in its litigation statements during the litigation that it was that its view of the relationship was much broader and it was essentially attacking all of the sovereign authority of the Commonwealth over the commission. Well, it didn't file a cross appeal, so I don't think they can be heard to ask for more expansive relief than the relief awarded by the district court. So, um, I can imagine that, uh, if they go to build a boathouse or a river house, then there might be litigation over that. And the parties can make their this case, you know, this case just involves the Scudder Falls building. So why don't you go to the merits, Mr? I will, Your Honor. Thank you very much. This court and the Supreme Court have repeatedly noted that a multi state entity being created by multiple states. Obviously, in this case, we're talking about Pennsylvania. New Jersey has only that authority that it's expressly given in his creating document and it's compact. On the other hand, the sovereign states that create a multi state entity like the one here only relinquish that sovereign authority that they expressly and unmistakably relinquish in the compact. The compacted issue here, and we're focusing, as Your Honor has suggested, simply on the regulation of building safety that the compacted issue here says nothing about granting the commission the authority to regulate the safety of its own boilers and so forth. And it says nothing about giving up relinquishing the Commonwealth sovereign authority that it has had for 100 years to regulate the safety of those buildings, just as it has done for the past 80 plus years. It is regulated the safety of the commission's buildings without a peep of complaint or objection from the commission until two years. You're correct, Mr Manstein. You're correct that there's nothing specific that I issue their own building permits or their own elevator certificates, what have you. But there is very broad general language. It almost reminded me of, uh, the necessary improper clause in the Constitution. Um, I mean, it really gives the commission broad authority, uh, here, doesn't it? If your honor is talking about Article two P, which is really the one that the I would respectfully disagree for a number of reasons. Article two P again, on which the district court and the commission have relied so heavily, you have to first start with the beginning of Article two, which applies to all of the parts of Article two, including two P, which says that the following powers are given to the commission for the effectuation of its authorized purposes. Well, the only authorized purposes for the commission relate to bridges. So just right off the bat, even Article two P and I agree that's the broadest language in the compact that could be an issue here. Even Article two P is subject to Article two's caveat that the powers given to the commission are for the effectuation of its authorized purposes, which are solely the operation of bridges across the Delaware River. So that's Mr Manstein. Can I stop you right here? Your premise is there has to have been express relinquishment by the states. But isn't our case law, I cite to the HIP case, which we mentioned to you all, and also the International Union Operating Engineers, doesn't our case law stand for the proposition that unless the states, if there's a multistate or a bilateral compact, unless the states have specifically reserved a right to themselves, it is not exert control. And in this instance, they did reserve with eminent domain and they reserve with respect to local streets. But here there is no reservation by the state. And isn't our case law pretty clear that we can skip this first, this expressed relinquishment by virtue of having a compact. That's the relinquishment. And so if the state wants to reserve a right, it has to say so. Isn't that our law? For a number of reasons, I don't think that's law that applies here, Your Honor. I agree with the examples that John gave of eminent domain and in local streets. I think those cut the other way, in fact. Here, the compact expressly gives the Commission the power of eminent domain. That is a power it would not otherwise have. If the rule of law was it has all those powers and the Commonwealth gives up all those powers not mentioned in the compact, there'd be no reason to have a provision that says that the Commission has the power of eminent domain. That's provided to the Commission because it only has that sovereign authority that it's expressly granted. In terms of the local streets, that's very different because the municipalities in Pennsylvania don't have the same plenary sovereign authority that the state has. And so with regard... All right, so maybe they weren't good examples, but these two cases that we regarding the state's ability to exercise this, then it is something that the Commission has the power to and the states do not have unilateral power. Isn't that correct? I don't think it is. I think you have to look at the context of those cases in which that language is used. Those cases both involved claims by private parties, not sovereign states that created the multi-state entity, but private parties seeking to impose new obligations, not seeking to continue the same regulatory authority that it exercised for 80 years, but seeking to impose new obligations on the fundamental operations of those multi-state entities. And I think all of those things distinguish those cases from this one, so that that language may have applied in those cases where you had private parties seeking to impose those obligations on the fundamental operations. But here, that's not what's going on. You have a sovereign state... I think that's different. But what state, what case stands for the proposition that there has to be an express relinquishment of a right by the state in order for it to be governed by the Compact and the Commission itself? I mean, the one that I think is most direct is the Supreme Court's decision in Tarrant, which says expressly that and specifically says that silence is not enough to constitute an express relinquishment of sovereign authority. And in fact, this court, in the cases that Your Honor has asked about, in the case of the Supreme Court, has removed that language from Tarrant. And I think in a case like this, where it's the sovereign state, the state of which the Commission itself is an instrumentality, that the sovereign state is seeking to continue exercising the same sovereign authority that the Commission agreed for 80 plus years it was entitled to exercise. And it's looking to do that not with regard to the bridges. So even if we would agree that with regard to the purposes for which the Commission was created, was to operate the bridges over the Delaware River, sure, it can have an administration building in Pennsylvania or New Jersey, but it wasn't created for the purpose of creating, constructing a building in Bucks County. It was only for the time we have, anytime we have a Compact that relates to an issue, we have to start parsing it and see whether, oh, is it a bridge issue? Or well, it's an administration issue that affects the bridge, but maybe it's not as closely related. We really, we really have to do that. I don't know where in the case law it would say we do that. I think if you look at Tarrant, it says you don't have to do that because you look at the land... Tarrant is water that they're trying to get cross-border water rights, and the silence there created an ambiguity. This is very different. That was a huge situation involving the water in Texas and Oklahoma, and a lot of rights to land and water are different. So I don't think Tarrant helps you at all. Well, again, respectfully, Your Honor, I don't think that the language in which we rely that was repeated by this court in many cases, including the cases that Your Honor cites, I don't think that that was necessarily linked to the water rights issue in Tarrant. I think that it's linked to the issue of a multi-state compact. A multi-state entity like the Commission that was created here by Pennsylvania, New Jersey, once it's created, it doesn't have the same wall-to-wall plenary authority, plenary sovereign authority that a state has. It simply does not, and the Supreme Court's case law makes that clear, and I don't think that operating engineers or the HIP case say otherwise. I think what they say is that a private party cannot come in and impose new obligations on the core functions of a multi-state entity, and that is very different than a case such as this one. Why is the Commission changing what you say is 80 years of the course of performance in this matter? Why is it, Your Honor? I'm sorry. Why has the Commission changed what you claim to be 80 years of performance where Commonwealth has been able to exercise this kind of authority? I can't answer that question, Your Honor. I don't know if Mr. Scott can answer during his time, but we actually, during discovery, sought to discover the Commission objected to that discovery. We moved to compel it to produce discovery regarding the background story to why it changed after 84 years of, without a peep, without an objection, accepting and agreeing for 84 years. The record is unequivocal that for those 84 years from the creation of the Commission in the 30s until 2018, that the Commission agreed that the Commonwealth for the safety of the Commission's buildings in Pennsylvania, not on the bridge, not in Pennsylvania, that's all that's at issue. And we sought discovery on why that had changed suddenly in the last two years. And as I say, the Commission objected to that and the court did not order them to produce that discovery. So I don't know what the answer is. Again, the record is clear, though. The Commission claimed, you know, its lawyers claimed after the fact that for those 84 years, it was just agreeing to allow the Commonwealth to regulate the safety of the building voluntarily. There's zero evidence in the record of that. I mean, that's legal argument. But in terms of, and again, this was not decided on the pleadings this case, as the court knows, it was decided on cross motions for summary judgment. And the record, summary judgment record, is clear that for 84 years, the Commission did not object at all. There's lots of contemporaneous records that the Commonwealth put into the summary judgment record that evidence that both sides agreed for decades that the Commonwealth had the authority to regulate the safety of the Commission's buildings, just like it did throughout Pennsylvania. Mr. Merenstein, let me just draw your attention to the language of the Compact, because we treat this like a contract, correct? We have to look at the language of the Compact, right? Yes. So you said that the purpose of the Compact was to operate bridges across the Delaware River, but that's only a part of it. There's quite a bit more, right? Not in Article One, which lays out the purpose. It has other powers, if that's the case. It relates to purchasing, constructing, maintaining, operating bridges. If there's something else I'm missing, I, you know, apologize in advance. In Article Two, the other words, there are other words besides operation. And the words I'm looking at are administration, maintenance, and then it goes on to talk about new additional bridge facilities. So, as I read that, the natural reading, I think, is that this Compact is to administer, operate, and maintain the current bridges, and perhaps to construct additional bridges. I would agree. Again, all bridges. All right. But then when we go to P, what I was referring to as sort of the parallel to the necessary and proper clause, P says, to exercise all other powers, not inconsistent with the constitutions of the two states or of the commission, which may be reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the powers granted the commission. Well, if the commission has the power to administer the bridges, then why isn't the Scudder Falls building right in the heartland of that purpose to administer the bridges? And why then can't, under P, the commission exercise all of the powers related to what's necessary to build that building and rent that building and operate that building? Again, with respect to that, I think it's a huge leap to go from what's reasonably necessary to operate or maintain or construct a new bridge to having to regulate the safety of its own building. I mean, businesses throughout Pennsylvania have the right to construct new facilities, to operate new facilities, to maintain facilities. What's necessary for them to do that is not to regulate the safety of their own construction and elevators and boilers and fuel tanks. So again, the language I think that's key in there that your honor read is reasonably necessary or incidental to those purposes. I don't think so. It may be the case, and we're not disputing it here. It may be the Scudder Falls administration building is reasonably necessary for operating the bridges. We're not disputing that. But having the building is very different than saying that it's reasonably necessary for the commission to have no regulatory obligations from the commonwealth. The commonwealth, as I said, regulates the safety of construction and elevators and boilers and fuel tanks on the commons. And there's no reason why it's reasonably necessary for the commission to be entirely free of that regulation and to be able to regulate it for itself, its elevators, its fuel tanks and so forth, in order to operate the bridges. I mean, it's simply nothing logical about that, you know, about that connection. It needs, it doesn't need to regulate its own safety of its buildings in order to maintain or operate the bridges. But why wouldn't safety be another matter under N, location, system, character of and all other matters in connection with any and all improvements or facilities, which it may be authorized to own, construct, establish, effectuate? I mean, safety is a matter that exists in connection with improvements and facilities. Why isn't it specifically included and relinquished? And my answer is going to be somewhat similar, John, to the answer with regard to 2P. First of all, you have to look at, for all of Article 2, these are powers that are given to effectuate its authorized purposes, which are solely to operate the bridges. No, no, no, that's what I thought we just established. Operate is part of it. They are also empowered to administer and construct new bridges, perhaps, right? You're homing in on operate because you don't want, it seems you don't want to concede that administration is an important function. And I apologize, I'm using that as shorthand. I am not avoiding administration. I mean, this is clear if you look at our briefs, you know, we acknowledge that it's given a broad remit with regard to bridges, to administer them, operate them, maintain them, construct them. No, no question. That's not my issue. And this is an administration building. This is not, you know, some building for something other purpose. It's an administration building. Right. And again, I can't emphasize enough that we're not saying that they can't, or they need even our approval in order to construct an administration building. But it goes a step much further than the language of either 2N or 2P to say that it's necessary in order to have an administration building to administer the bridges, to determine. So if the commission decides it's going to use, you know, kite string and duct tape to create an elevator, apparently it can do that because the Commonwealth can't say, wait a second, you know, we're going to inspect that and make sure that's safe. So that when people get on that elevator, it doesn't crash and hurt or kill people. There's just, I don't see any way to read into article 2N or 2P. And I'll go back to the specific language of 2N that Judge Rendell asked about. It's not clear the facilities and buildings. Throughout the compact, almost all the references with one exception to facilities and improvements are referring to the bridges, not to, and it makes sense because a commission that is, that's purpose involves bridges and many aspects of bridges should be given the authority to determine the location, the character and so forth with regard to the bridges. It's entirely different to say, because it's, excuse me, because in order to operate the sovereign authority to do anything it wants with that administration building within the borders of Pennsylvania. And that's just a, again, that's a step that it's implausible that the legislators in the 1930s in Pennsylvania and New Jersey thought they were giving this commission that they were creating to deal with the bridges, such incredible sovereign authority, essentially declaring independence entirely from the Commonwealth of Pennsylvania and the state of New Jersey. And I don't think that that's a fair reading of articles 2N or 2P. And I know I'm way over my time and I'll gladly answer the, any other questions from the court, but otherwise I'll cede the microphone to Mr. Scott. All right. Hearing none, we'll go to Mr. Scott. Good afternoon, your honors. I wanted to get right into the merits with regard to HIPP and operating engineers. I think those cases tell us some very important points in terms of how to analyze these compacts. You look to the express terms of the compact to determine what was retained by the sovereign, in this case, New Jersey and Pennsylvania. This court previously has rejected the same arguments that are being made by the Commonwealth in this case, which is because it's silent on whether or not both states can use their own construction codes, their safety codes, or their building codes and enforce their state law, therefore they must have retained their sovereign power. That argument was rejected in both HIPP and operating engineers. And this court has held that once the states enter into a by-state entity like this to commission, both the state of New Jersey and both the Commonwealth of Pennsylvania relinquish their sovereign authority unless it is expressly stated in the compact. This compact is not ambiguous like the district court found. This compact does not indicate anywhere. Excuse me. Are there any limitations to the authority of the commission? Let's say geographical or otherwise, I mean, obviously, reasonably necessary to administer is important here. But what are those limitations? So there's a limitation, for example, if the commission needed to have a roadway or in between its properties, it would have to, it can purchase land, it would have to get an agreement with the local municipality in terms of acquiring the land and complying with the local municipalities rules and regulations. That's one example. The power of taxes and levy is another example. So that both of the states, when they entered into this compact, knew exactly what they wanted to retain and what power they they knew how to do that. They knew how to exclude power from the commission, but they also do how to expressly retain powers. So we don't look at it from the point of what's not in the compact. We look at what's in the compact, what's not in the compact. So for example, how about something that's really such a police power, like safety or how about zoning? Could they put a building anywhere in a residential development and not comply with the zoning laws? Your Honor, they would have to comply with the local zoning laws, but they have the power to acquire the land and contract the land. They have the power to comply with the zoning laws. They have to comply with the law so it's for safety purposes in terms of the police powers that are still with the local municipality. So if they wanted to build a building in, let's say, Upper Makefield Township, they would still have to talk to the local municipality. That was not retained. That specific was not retained. That was retained by the state. That was not given to the commission. I don't see it in the compact that they retained authority over zoning or safety. I mean, I think what you're saying is a little bit, it doesn't work. I don't think they have to comply with zoning, do they, under your theory? Well, they do not. Under our theory, no, but there's a section in the compact that requires for, I was talking about land, acquiring land. They have to work with the municipality in terms of acquiring land. You get to choose the location based on M, right? That's right. So is it your position that this for the operation of the commission's structures and the bridges? And so that would not, and that's a great question. I don't believe it would be part of that compact because it's not for the maintenance and operation of the bridges for people traveling to and from New Jersey and Pennsylvania, which is the reason for the not have to worry about what was happening on one side of the river versus the other side of the river. So the states made this entity for that purpose and that purpose would include allowing the commission to build and to maintain and operate all pertinences, buildings, and structures that are necessary to their mission. Under my hypothetical, I'm presuming that an administration building is necessary and I assume you would agree because that's why you built one in Scudder Falls, right? Yes. So my question is, how far does your administrative latitude extend? Because it wouldn't be totally beyond the realm to imagine that New Jersey and Pennsylvania, the commission, I'm sorry, might decide that the land in Scudder Falls is very, very expensive and the land on the other side, on the New Jersey side is very, very expensive. So you might want to put administration buildings in the sticks where your acquisition costs and your building costs might be a lot cheaper. Would you be allowed to do that? Yes. And do it not subject to the regulation of the police power of the municipality? I would say the compact allows the commission to purchase land so long as it's within their powers and their operation of what their purpose was. So for example, the Turnpike Commission, I'll give you an example, has a building in Harrisburg, their main building, but they also have other buildings. So yes, I think the power vested in the commission to acquire land is not geographical at all. It's within the state of Pennsylvania or the state of New Jersey. And as long as it's within their purview and within their power and within their mission, and unless it was reserved by the Commonwealth of Pennsylvania or the state of New Jersey, it can't be a unilateral action, then yes, neither state can employ their codes, their safety regulations, inspection guidelines. So yes, Your Honor, I would say yes to that question. I would say that Judge Sirica, you asked a question regarding the past conduct. I would say the district courts did the right analysis. First, the district court looks at the terms and conditions of the compact first to whether or not there was any ambiguous terms. There is no ambiguous terms in this compact related to the state's ability not to come in and use their safety codes and not to come in and inspect. So you don't need to look at past conduct to create an ambiguity because there is no ambiguity. So the Commonwealth is doing the reverse argument. They're doing exactly what was rejected by Judge Hardiman in it and what was rejected by Judge Rendell in engineering and operations. And so I would say the past conduct is not relevant at all, actually, to whether or not the compact is ambiguous and whether or not the state of New Jersey or the Commonwealth of Pennsylvania expressly retained the right to do so. What's your view on the sovereign immunity issue? Well, this is a clear case of ex parte young. So I'll step back a little bit, Your Honor. When summary judgment was filed in this case, the 11th Amendment was always at issue or it should have been an issue in the Commonwealth's mind. There's nothing in the record that would support any finding that there was any, and I heard a concession, that this would solve anything to the FISC or affect the FISC. But what this is, is a classic ex parte young circumstances where we have a prospective relief, where we have no money at issue, where we have a federal law, meaning the compact once it was ratified, and enforcing the federal law. So our position is that the 11th Amendment immunity does not apply in this case. And Waterfront, of course, is on its own facts. And as the court already pointed out, that was a much different circumstance because that would have affected the entire state of New Jersey, because they were trying to force New Jersey, I believe, to stay in the compact and they wanted out. So that would have affected the issue. The issue wasn't addressed by the district court. Was it even raised in the district court? It was not raised in the district court. I would have said to Your Honor, that could be considered waiver, but of course, it's jurisdiction, it's 11th Amendment. I couldn't say that it's a waiver, but the course of conduct below would indicate to all of us that the Commonwealth never even considered it in the first instance. And the ex parte young has been around for a very long time. So that's our position, actually, on the 11th Amendment immunity. And one of the other things I wanted to touch on is the idea that we, when we're building these structures and maintaining these structures, it all goes to the safety of the folks who work there, workers, people who visit. So it was provided to us. The commission was giving us, the commission was given the authority to inspect its own property, to make sure its property was safe. The compact does not give Commonwealth the right, it's not expressly stated, to use their codes and their inspections. So with that, Your Honor, I think that I rest and we rest on our brief unless there's any other questions. All right, hearing none, we thank you, Mr. Scott. We'll hear Mr. Bernstein's rebuttal. Thank you, Your Honor. Just very briefly, two or three points. Just the one point on the 11th Amendment immunity, it was raised in the Commonwealth's answer as a defense. So 11th Amendment immunity was waived. And as I believe I heard Mr. Scott acknowledge and concede, the law is clear from this court and the Supreme Court that that is an issue that cannot be waived. It was not affirmatively forfeited. So it clearly is before this court, there is no waiver. In terms of the merits, the two brief points I would make there is simply a disconnect between the notion that the Commission, along with the Commonwealth, agreed for more than eight decades that the Commonwealth had the authority, the sovereign authority to regulate safety on the Commission's buildings. There's a disconnect between that and the notion that this compact that's now 86-some years old, unambiguously doesn't allow the Commonwealth to regulate safety on the Commission's buildings. There's simply a Mr. Scott about the police power of zoning. But one question that he really hasn't addressed is literally the police power. Under the Commission's view of its authority and the lack of the Commonwealth's authority, the Pennsylvania State Police, for example, just like the Department of Labor and Industry, would have no sovereign authority because it's nowhere mentioned in the compact to investigate, to stop, to make an arrest of somebody at the Scudder Falls Administration building if a crime is committed. And I could go on and on. The Department of Environmental Protection presumably can't stop the Commission from just dumping seriously hazardous waste out behind its Scudder Falls Administration building because that's not mentioned in the compact. Again, I could go on and on. This case, and this goes to both the sovereign immunity and the merits, this case may ostensibly be about some narrow dispute involving regulation by the Department of Labor and Industry at this one building. But the Commission's argument, the Commission's view of its authority is remarkably broad and would preclude the Commonwealth from exercising essentially any sovereign regulatory authority over the Commission. Let's assume that we disagree with you on sovereign immunity. And we also see both HIP and operating engineers as being significant obstacles for your argument here. Is there anything that you would suggest that we could do to limit this? Or is this, it's an all or nothing situation here? Well, as I think Judge Harden pointed out in questioning me on the sovereign immunity issue, it will be necessarily limited to the district court's declaratory judgment, its final judgment, which only relates to the Scudder Falls Administration building, only relates to the Department of Labor and Industry. I don't recall exactly the words of it, but it relates to certain aspects even, not even, I think it was the fuel tanks and the boilers or perhaps the elevators. So I think that if the court affirms, and obviously we respectfully disagree and think that it should not fit on the two grounds that we've argued, but if it does, it will necessarily be limited to that very narrow declaratory judgment. It still, in our view, would be a troubling result that would be essentially finding, despite the silence on this issue in the compact, that the Commonwealth did not retain its sovereign authority to ensure the public's health and safety through regulating the safety of a building within its borders, not the bridges, but a building within the borders of Pennsylvania. So we would still find that to be a very troubling result that we don't believe is required by the decisions in HIPAA and operating engineers, but at least it would be limited to the very limited scope, the narrow scope of the district court's declaratory judgment. If the court has no further questions, I appreciate the opportunity to argue this appeal. Thank you. Well, we thank you, Mr. Merenstein, and we thank Mr. Scott. It was a pleasure to read your briefs and your arguments were quite helpful, and we'll sort through this as quickly as we can. We'll take the matter under advisement.